1

2

3

4

5

6                      **UNITED STATES DISTRICT COURT**

7                          **DISTRICT OF NEVADA**

8  BRENT PALMER, an individual, BOB         )
   FARRELL, an individual, and TECOMA       )
9  TOWNSHIP VOLUNTEER FIRE                   )
   DEPARTMENT, a Nevada business entity,    )
10                                           )          3:12-cv-148-RCJ-VPC
                  Plaintiffs,                )
11                                           )          **ORDER**
            v.                               )
12                                           )
   ROBERT K. STOKES, in his official and    )
13 individual capacities; PETE ANDERSON, in )
   his official and individual capacities; ELKO )
14 COUNTY, NEVADA, a governmental entity;   )
   NEVADA DIVISION OF FORESTRY, a           )
15 governmental entity,                      )
                                             )
16                Defendants.                )
                                             )
17 _____ )

18         Currently before the Court are Defendants Robert Stokes and Elko County's Motion for

19 Summary Judgment (#41) and Defendants Pete Anderson and Nevada Division of Forestry's

20 Motion for Summary Judgment (#45).

21                          **BACKGROUND**

22 **I.    Complaint**

23         In March 2012, Plaintiffs Brent Palmer, Bob Farrell, and Tecoma Township Volunteer

24 Fire Department (collectively "Plaintiffs") filed a complaint in this Court against Defendants

25 Robert K. Stokes (official and individual capacities), Pete Anderson (official and individual

26 capacities), Elko County, Nevada, and the Nevada Division of Forestry.  (Compl. (#1) at 1-2).

27 According to the complaint, Farrell was the Fire Chief of the Tecoma Township Volunteer Fire

28 Department ("Tecoma VFD") and sat on its Board.  (*Id.* at 6).  Palmer was the Deputy Fire

Chief of Tecoma VFD and sat on its Board.  (*Id.*).  Tecoma VFD was a non-profit corporation

that was incorporated in Nevada and was responsible for providing quality and effective life-saving medical care and fire protection to the residents of, and visitors of, Montello Township, Tecoma Township, and Elko County, Nevada. (*Id.*). Stokes was the Elko County Manager and was responsible for implementing the Elko County Board of Commissioner's policies that were expressed through ordinances, minute orders, rules, and regulations. (*Id.* at 6-7). Elko County was a governmental entity located in Nevada and was the public employer of Stokes. (*Id.* at 7). Anderson worked for the Nevada Division of Forestry ("NDF") as State Forester and Firewarden. (*Id.*). NDF was a governmental entity that was charged with protecting, enhancing, and managing the natural resources of Nevada. (*Id.*).

The complaint alleged the following. (*Id.*). On July 4, 2011, the Montello Structure Engine ("Tecoma 53") had mechanical problems during the holiday parade in Montello, Nevada in Elko County. (*Id.*). Tecoma 53 had idling problems and to keep the engine from shutting down, Tecoma VFD had "to rev the engine . . . up to 3000 revolutions per minute (rpm) out of a maximum of 4000 rpm" to keep the engine at 3000 rpm or above. (*Id.*). This mechanical issue jeopardized the lives of Tecoma 53's crew, people in need of medical assistance, and inhibited Tecoma VFD's ability to fight fires. (*Id.*). NDF had been called and notified about the problem. (*Id.*). In mid-July 2011, Palmer called the NDF office in Elko, Nevada, to inquire as to when a mechanic would be sent to fix Tecoma 53. (*Id.*). Palmer could not reach a mechanic and left a message but nobody returned his call. (*Id.*). In mid-August 2011, Palmer called the NDF office in Elko again and left a message. (*Id.* at 8). Nobody returned his call. (*Id.*). On September 7, 2011, Palmer emailed Tim Woolever, Fire Management Officer for NDF in Elko and asked Woolever to call him to discuss repairs for Tecoma 53. (*Id.*). Woolever did not respond. (*Id.*). Between September and December 2011, Palmer and others repeatedly contacted NDF and Elko County and requested assistance in repairing Tecoma 53 but did not receive any assistance. (*Id.*). In December 2011, Palmer informed the Montello Town Board that Tecoma 53 was not fixed and that the Montello Town Board needed to consider discussing the issue with the Elko County Board of Commissioners. (*Id.*). In December 2011, a NDF mechanic made several trips to Montello

but failed to fix Tecoma 53.  (*Id.* ).

The complaint alleged the following.  (*Id.*).  Tecoma VFD acquired a Type-6 Brush Engine ("Tecoma 23") in 2010 as a first responder vehicle for medical calls.  (*Id.*).  Within three months of acquiring Tecoma 23, the vehicle began exhibiting mechanical problems including "throwing alternator belts on almost every run."  (*Id.* at 9).  Although NDF mechanics put on new alternator belts after almost every run, they never resolved the underlying problem.  (*Id.*).  In Spring 2010, Tecoma 23's gas pedal began to stick when the vehicle went out on call, endangering the lives of its crew and those in need of assistance.  (*Id.*).  NDF mechanics put some oil on the pedal but did not correct the underlying problem.  (*Id.*).  After the pedal stuck four or five times, NDF replaced a frayed cable resolving the issue.  (*Id.*).  From December 2011 through January 2012, Tecoma 23's engine shut down while the vehicle was responding to an emergency call and had to be towed back to the Montello Station.  (*Id.*).  Tecoma VFD lodged a complaint to NDF, but NDF could not fix the problem and Tecoma 23 was loaded onto a flatbed truck and transported for repairs.  (*Id.*).  In January 2012, NDF released Tecoma 23 back into service.  (*Id.*).  While responding to an emergency call, Farrell started up Tecoma 23 and smoke immediately began billowing out of the engine.  (*Id.*).  Farrell inhaled significant quantities of toxic smoke.  (*Id.*).  Soon after, Farrell filled out an injury report to NDF.  (*Id.*).  NDF picked up Tecoma 23 with a transport vehicle the next day, then returned the vehicle a few days later claiming that the fire damage had been repaired.  (*Id.* at 10).  However, the vehicle was still in poor condition.  (*Id.*).  Palmer reported the issue to NDF but NDF disregarded the grievance.  (*Id.*).

The complaint alleged the following. (*Id.*).  NDF employed prison inmates to repair mechanical issues on Tecoma 23 and Tecoma 53.  (*Id.*).  The quality of work was substandard and the inmates were not certified mechanics.  (*Id.*).  Farrell and Palmer repeatedly and frequently complained about the quality of the prison inmates' work on Tecoma VFD's equipment including Tecoma 23 and Tecoma 53.  (*Id.*).  In response to the complaints, Stokes "unlawfully retaliated against them by ordering that Plaintiffs be prevented from entering the Montello and Pilot Valley Fire Stations, using County fire equipment, and serving on the Board

3

of the Tecoma VFD." (*Id.*).

The complaint alleged that on February 9, 2012, Stokes wrote letters to Farrell, Palmer, and Tecoma VFD advising that Farrell and Palmer were no longer authorized to use county-owned or county-managed fire equipment, including radios and radio frequencies, enter the premises of the Montello and Pilot Valley Fire Stations, or participate on the Tecoma VFD Board of Trustees. (*Id.* at 11). Stokes undertook this action without the approval of the Elko County Board of Commissioners and without a duly noticed hearing. (*Id.*). In the February 9th letter, Stokes falsely accused Farrell and Palmer of being responsible for the lack of proper communications and failing to adhere to instruction. (*Id.*). Farrell and Palmer asserted that they "long labored the County to provide an express written chain of command." (*Id.*). In his letter to Tecoma VFD, Stokes threatened to withdraw Elko County liability coverage, equipment, and fire district services from Tecoma VFD if Farrell and Palmer continued to participate on Tecoma VFD's Board of Trustees. (*Id.* at 12).

The complaint alleged the following. (*Id.*). Stokes's actions failed to give Tecoma VFD an opportunity to discuss and formulate a succession plan before terminating Farrell and Palmer. (*Id.*). Stokes's actions presented a significant danger to Elko County because, due to the lack of leadership, Tecoma VFD was unable to report to a smoke distress call in Pilot Valley, Nevada on March 7, 2012. (*Id.*). As a result, West Wendover Fire had to respond to the call resulting in an hour response time when Tecoma VFD could have responded in ten minutes. (*Id.*).

The complaint alleged the following. (*Id.* at 13). In the summer of 2007, Palmer voiced concerns to Captain Al Case of NDF about the disappearance of federal grant money that was allocated for the benefit of Tecoma VFD. (*Id.*). Palmer and Farrell voiced the same concerns to Fire Management Officer Sam Hicks and Captain Case of NDF in December 2007. (*Id.*). Elko County Sheriff Dale Lotspich and Lt. Marv Mortensen conducted an investigation into Palmer's complaint and the information from their investigation was entered into the National Crime Data Base. (*Id.*). Palmer and Farrell believed that Stokes ordered the Elko County Sheriff to stop its investigation in order to cover-up evidence of wrong doing. (*Id.*). Plaintiffs

believed that Pete Anderson personally or privately benefitted from the mis-allocation or fraudulent transfer of federal grant money slated for Tecoma VFD and that he received federal grant money slated for Tecoma VFD but gave Tecoma VFD equipment of lesser value than the grants. (*Id.* at 13-14). Plaintiffs believed that Stokes personally or privately benefitted from the mis-allocation or fraudulent transfer of federal grant money slated for Tecoma VFD. (*Id.* at 14). Plaintiffs believed that Elko County, through Stokes, engaged in a civil conspiracy with NDF, through Pete Anderson, to defraud or deprive Tecoma VFD of federal grant money. (*Id.*). Plaintiffs believed that Elko County, through Stokes, retaliated against Palmer and Farrell for voicing concerns about NDF's misappropriation of federal grant money and equipment owned by Elko County. (*Id.*).

The complaint alleged seven causes of action. (*Id.* at 16-19). In the first cause of action, Plaintiffs alleged First Amendment retaliation and Fourteenth Amendment due process violations against Stokes pursuant to 42 U.S.C. § 1983. (*Id.* at 14-16). In the second cause of action, Plaintiffs alleged tortious interference with professional advantage of serving on Tecoma VFD's Board of Trustees and providing life-saving and fire services for Tecoma VFD against Stokes. (*Id.* at 16-17). In the third cause of action, Plaintiffs alleged defamation against Stokes. (*Id.* at 17).

In the fourth cause of action, Plaintiffs alleged that Elko County and NDF maintained policies or customs exhibiting deliberate indifference to their constitutional rights pursuant to 42 U.S.C. § 1983. (*Id.*). Specifically, Elko County and NDF failed to exercise reasonable care in hiring their employees, i.e. Stokes and Anderson, and failed to adequately supervise and train their employees. (*Id.* at 18).

In the fifth cause of action, Plaintiffs alleged civil conspiracy against Elko County, NDF, Stokes, and Anderson regarding mis-allocation and fraudulent transfer of federal grant money and retaliation against Plaintiffs for lodging complaints. (*Id.*). In the sixth cause of action, Plaintiffs alleged respondeat superior against Elko County and alleged that Elko County was liable for the tortious acts committed by Stokes. (*Id.* at 19). In the seventh cause of action, Plaintiffs alleged respondeat superior against NDF and alleged that NDF was liable for the

1  tortious acts committed by Anderson.  (*Id.*).

2  ## II.    Summary Judgment Evidence

3        The Articles of Incorporation of the Tecoma Township VFD, dated August 4, 1996,

4  created a non-profit corporation whose purpose was to acquire, own, maintain, and operate

5  fire apparatus for use by the corporation in protection of persons and property from injury, loss,

6  damage or destruction by fire in Tecoma Township VFD in Elko County, Montello, Nevada.

7  (Articles of Incorporation (#41-1) at 2, 4).  The Articles of Incorporation created a seven-

8  member Board of Trustees who appointed the Fire Chief.  (*Id.* at 3).  The Fire Chief, upon

9  approval of the Board of Trustees, appointed the Deputy Fire Chief.  (*Id.*).

10        NDF and Elko County had an interlocal contract with each other for NDF to provide fire

11  protection to Elko County.  (Interlocal Contract (#41-1) at 6, 8).  The purpose of the contract

12  was to provide revenue from Elko County to NDF for fire district operations under the Nevada

13  Revised Statutes.  (*Id.* at 6).  The total contract estimation was not to exceed $5 million for the

14  four-year contract period ending August 30, 2014.  (*Id.*).  Pete Anderson, the State Forester,

15  signed the contract on behalf of NDF.  (*Id.* at 11).

16        Under the contract, Elko County and NDF provided the scope of work for the fire district

17  operations for the Elko County Fire Protection District (the "District").  (*Id.* at 12).  The District

18  included all of Elko County outside the boundaries of incorporated cities and unincorporated

19  townships.  (*Id.*).  NDF administered the District with the Elko County Commissioners serving

20  as the Board of Directors.  (*Id.*).  The District operated 23 volunteer fire department stations,

21  3 career stations, staffed 250 volunteer firefighters, 12 career staff, and 71 apparatus.  (*Id.*).

22  Under the contract, Elko County had the right to review volunteer fire department activities and

23  personnel to ensure that the County's mission and public service requirements were met.

24  (*Id.*).  The contract authorized NDF to manage all County-owned vehicles including repairs,

25  movement/placement, and assignment to emergency incidents.  (*Id.* at 13).  NDF would assist

26  the District with maintenance of apparatus and ensure that District vehicles, equipment, and

27  apparatus met County approved identification standards.  (*Id.*).

28        At his deposition, Robert Stokes, testified to the following.  (Stokes Depo. (#41-1) at

1    28).  When Elko County deals with volunteer fire departments Elko County "would like" and

2    "request" that they work through the NDF to administer the issues of the fire protection district.

3    (*Id.* at 29-30).  Stokes made "repeated requests" to Palmer to work through the chain of

4    command and felt that there were liability concerns as a result of Palmer's failure to follow the

5    chain of command.  (*Id.* at 31-32).

6              On July 16, 2008, the Elko County Board of Commissioners hand delivered both Bob

7    Farrell and Brent Palmer letters which stated the following:

8         This is your official notice that the Elko County Fire Protection District is no
         longer authorizing you to use county-owned fire equipment, including trucks,
9         radios, and radio frequencies.  You are no longer authorized to go to the
         premises of the Montello and Pilot Valley Fire Stations.  If you go on the
10        premises, you will be trespassing.

11        The Elko County Fire Protection District along with the Nevada Division of
         Forestry needs to have open communications with each volunteer fire
12        department. The lack of meaningful communications with the Tecoma Volunteer
         Fire Department Chief and Deputy Chief has created liability issues for the
13        County and the State.

14   (2008 Official Notice (#41-1) at 38, 40).  Stokes, as Elko County Manager, signed the letters

15   and sent Pete Anderson and Tom Turk at NDF copies.  (*Id.*).

16             On February 9, 2012, the Elko County Board of Commissioners hand-delivered both

17   Farrell and Palmer letters which stated the following:

18        This is your official notice that effective this date the Elko County Fire Protection
         District no longer authorizes you to use county-owned or managed fire
19        equipment, including trucks, radios and radio frequencies.  You are no longer
         authorized to go onto the premises of the Montello and Pilot Valley Fire Stations.
20        If you go upon the premises, you will be in trespass.  Please return immediately
         any and all keys, equipment and materials. Elko County will instruct the Tecoma
21        Township VFD Board of Trustees that the Fire Protection District will not accept
         your participation on said Board.

22        The Elko County Fire Protection District must have effective communications
23        through the proper command channels with each volunteer fire department in
         the District.  The lack of proper communications and adherence to instruction by
24        the Tecoma Volunteer Fire Department has created liability concerns for the
         County and the State.

25        In order to insure a proper record of any further communication between you
26        and the County, you are instructed to submit your written comments by U.S. Mail
         at the address above.  Elko County will not accept e-mail or telephone
27        messages from you.

28   (2012 Official Notice (#41-1) at 42, 44).  Stokes, as Elko County Manager, signed the letters

1   and sent copies to the Elko County Board of Commissioners, Montello Advisory Board,

2   Tecoma Township VFD Board of Trustees, and NDF.  (*Id.*).

3          On February 9, 2012, Stokes, as Elko County Manager, signed and sent letters to the

4   Montello Town Board and the Tecoma Township VFD Board of Trustees which stated the

5   following:

6          Please be advised that effective this date, the Elko County Fire Protection
       District no longer authorizes Bob Farrell and Brent Palmer to use county-owned
7      or managed fire equipment, including trucks, radios and radio frequencies. They
       are no longer authorized to go onto the premises of the Montello and Pilot Valley
8      Fire Stations.  Elko County will not accept the participation of Mr. Farrell or Mr.
       Palmer on the Tecoma Township VFD Board of Trustees.  Elko County will
9      consider withdrawal of County liability coverage, equipment and fire district
       services if Mr. Farrell or Mr. Palmer continue to be involved with the Tecoma
10     Township VFD Board of Trustees.

11         The Elko County Fire Protection District must have effective communications
       through the proper command channels with each volunteer fire department in
12     the Fire District.  The lack of proper communications and adherence to
       instruction by the Tecoma Volunteer Fire Department has created liability
13     concerns for the County and the State.  Elko County resources are limited and
       volunteers are crucial to providing fire protection services.  Although the County
14     has been patient for some time, this situation can no longer continue.

15  (2012 Ltr to Town Board & Trustees (#41-1) at 46).

16         In his deposition, Brent Palmer testified to the following.  (Palmer Depo. (#41-1) at 49).

17  Palmer had ignored Stokes's second letter that said he could not be on the property, use the

18  equipment, or be a member of the fire department.  (*Id.* at 51).  Palmer stated that his

19  professional interest "would be . . . interaction that [he has] with other fire departments, other

20  fire chiefs in the county, [his] professional background."  (*Id.*).  The second letter from Stokes

21  caused Palmer "[e]xtreme anxiety, sleeplessness" and caused him to be in "very

22  uncomfortable positions explaining to people [he knew]."  (*Id.* at 52).  With respect to actual

23  evidence about Stokes and others committing fraud, Palmer stated, "I guess the lack of

24  evidence is what I have."  (*Id.* at 53).  Palmer stated that he "asked numerous people

25  numerous times to provide this information to [him]" and that in his mind, "when a government

26  official will not answer a [citizen's] very simple questions that [he's] entitled to . . . yes, that

27  raises red flags" and he suspected fraud.  (*Id.*).  Palmer was currently a firefighter/engine

28  operator with Tecoma VFD and held the office of Fire Board President of the Tecoma Fire

1   Board.  (*Id.* at 56).  In March 2012, Palmer was serving on the Tecoma Fire Board.  (*Id.*).

2       In his deposition, Robert Farrell testified to the following.  (Farrell Depo. (#41-1) at 58).
3   The Board of Trustees had fired him because he began drinking and, as fire chief, he could
4   not respond to anything.  (*Id.* at 59).  The department did not currently have a fire chief.  (*Id.*).
5   Palmer and Farrell's discussions about "grant problems" prompted the second letter from
6   Stokes.  (*Id.* at 60).  Before receiving the second letter, he was the fire chief and, after
7   receiving that letter, he remained fire chief.  (*Id.*).  He had remained involved with the Tecoma
8   VFD "for a while" after receiving the second letter.  (*Id.*).  After he received the second letter,
9   he continued going into the station and responded to several incidents.  (*Id.* at 60-61).  On the
10  advice of counsel, he "back[ed] off."  (*Id.* at 61).  He ignored the second letter from February
11  through June.  (*Id.*).  After Palmer received the second letter, he continued to participate in
12  responding to calls, use of equipment, going to the fire stations.  (*Id.*).  With respect to Stokes
13  and the alleged grant fraud or misappropriation, Farrell stated that he had "no direct
14  knowledge" and that it was "a belief."  (*Id.* at 62).  The factors that Farrell had personally put
15  together was the fact that he could not go to the county and complain of valid complaints
16  against a state agency that they had an agreement with.  (*Id.*).

17                                      **LEGAL STANDARD**

18      In reviewing a motion for summary judgment, the court construes the evidence in the
19  light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.
20  1996).  Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows
21  that there is no genuine dispute as to any material fact and the movant is entitled to judgment
22  as a matter of law."  Fed.R.Civ.P. 56(a).  Material facts are "facts that might affect the outcome
23  of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106
24  S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A material fact is "genuine" if the evidence is such
25  that a reasonable jury could return a verdict for the nonmoving party.  *Id.*

26      The moving party bears the initial burden of identifying the portions of the pleadings and
27  evidence that the party believes to demonstrate the absence of any genuine issue of material
28  fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265

                                            9

(1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## DISCUSSION

## I.    Defendants Stokes and Elko County's Motion for Summary Judgment (#41)

Defendants Stokes and Elko County assert that Plaintiffs cannot demonstrate any cognizable infringement of their First Amendment rights.  (Mot. for Summ. J. (#41) at 10).  Defendants argue that the five-step *Pickering*[1] test outlined in *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009) applies in this case.  (*Id.* at 11).  Defendants, for the purposes of this motion, do not dispute that Plaintiffs' purported speech addresses issues of public concern.  (*Id.* at 12).  Defendants argue that Plaintiffs' speech was unprotected because they made the speech pursuant to their official job responsibilities.  (*Id.*).  Defendants contend that any speech

---

[1] *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

regarding maintenance or repair of structure engines or grant applications were within Plaintiffs' official duties as Fire Chief and Deputy Fire Chief for Tecoma VFD.  (*Id.* at 13). Defendants assert that Plaintiffs did not suffer any adverse employment action because the February 9, 2012 letters did not cause Plaintiffs to cease their involvement with Tecoma VFD or cause them to be demoted, transferred, or otherwise disciplined. (*Id.* at 14).  Defendants assert that Palmer admitted that he is currently a firefighter/engine-operator, is the current President of the Tecoma VFD Board of Trustees, and deliberately ignored Stokes's letter and continues to utilize County-owned equipment and enter into County-owned firehouses.  (*Id.*). Additionally, Defendants assert that Farrell also remained in his volunteer position until the Tecoma VFD Board of Trustees fired him due to his drinking problem. (*Id.* at 15).  Defendants also argue that Plaintiffs' speech was not a substantial or motivating factor for Stokes's February 2012 letters because Stokes issued the letters to protect Elko County from the liability created by Plaintiffs' refusal to follow the chain of command. (*Id.*).  Defendants assert that Elko County has a legitimate administrative interest in enforcing its policy and avoiding liability. (*Id.* at 17).  Defendants argue that even if Plaintiffs could state a cognizable claim for First Amendment retaliation Stokes has qualified immunity. (*Id.* at 18).  Defendants assert that Plaintiffs cannot demonstrate a cognizable infringement of their Fourteenth Amendment due process rights because there was no actual deprivation of any interest, Plaintiffs do not have a protected interest in County-owned equipment or firehouses, and the letters did not terminate Plaintiffs from their volunteer positions. (*Id.* at 20).   Defendants argue that the fourth cause of action against Elko County for *Monell*[2] liability fails because Plaintiffs cannot demonstrate any constitutional injury caused by Stokes.  (*Id.* at 23).  With respect to the state law claims, Defendants contend that there is no cause of action in Nevada for tortious interference with professional advantage and that the defamation claim fails because Stokes's letters were not false and defamatory.  (*Id.* at 25-26).  Additionally, Defendants argue that there is no evidence to support a civil conspiracy for grant fraud. (*Id.* at 28).  Defendants

---

[2] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

1   contend that there is no claim under respondeat superior for Elko County if there is no

2   underlying cause of action. (*Id.* at 29).  Defendants assert that, although Tecoma Township

3   VFD is named as a plaintiff, the complaint never specifies any claims which are brought on its

4   behalf.  (*Id.* at 29-30).

5         In response, Plaintiffs assert that Tecoma VFD is a private corporation and that

6   Plaintiffs are private individuals who are not subject to the law set forth in *Eng v. Cooley*

7   regarding public employees.  (Opp'n to Mot. for Summ. J. (#50) at 2, 11).  Plaintiffs argue that

8   because they are private citizens with a private entity they are entitled to maximum

9   constitutional projections for their political/public speech.  (*Id.* at 12).  Plaintiffs argue that their

10  grievances are true.  (*Id.* at 13).  Plaintiffs assert that no established chain of command

11  existed.  (*Id.* at 15).  Plaintiffs do not address any other argument.  (*See id.* at 1-16).

12        In reply, Defendants assert that the test in *Eng v. Cooley* applies to this case because

13  Plaintiffs were similar to government contractors.  (Reply to Mot. to Summ. J. (#55) at 6-7).

14  Defendants argue that, even if the five-step sequential test did not apply because Plaintiffs

15  were private in nature, Plaintiffs cannot demonstrate a cognizable claim under the applicable

16  test.  (*Id.* at 8).  Specifically, Defendants argue that Plaintiffs did not engage in any

17  constitutionally protected activity because the refusal to follow an established chain of

18  command is not entitled to constitutional protection.  (*Id.* at 9).  Defendants contend that there

19  were no adverse effects from Stokes's letters.  (*Id.* at 10).  Defendants argue that there is no

20  substantial causal relationship between any constitutionally protected activity and any alleged

21  adverse action by Stokes.  (*Id.* at 11).

22        **A.     First Amendment Retaliation (Claim One)**

23        In *Eng v. Cooley*, the Ninth Circuit found that the Supreme Court's *Pickering* case had

24  set forth a sequential five-step series of questions with respect to First Amendment retaliation

25  law.  552 F.3d at 1070.  The sequential five-step series of questions asked: (1) whether the

26  plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen

27  or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating

28  factor in the adverse employment action; (4) whether the state had an adequate justification

1    for treating the employee differently from other members of the general public; and (5) whether

2    the state would have taken the adverse employment action even absent the protected speech.

3    *Id*.  Under this test, Plaintiffs bear the burden of establishing steps one through three.  *Id*. at

4    1070-71.  If Plaintiffs pass the first three steps the burden shifts to the government to establish

5    steps four and five.  *Id*. at 1071-72.

6         This test most commonly applies to government workers who lose their job as a result

7    of some public communication critical of the government entity for whom they work.  *Blair v.*

8    *Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010).  However, the Ninth Circuit has found that

9    *Pickering* applies to First Amendment retaliation claims by government volunteers.  *Hyland v.*

10   *Wonder*, 972 F.2d 1129, 1136-37 (9th Cir. 1992).

11        In *Hyland*, the Ninth Circuit held that whether plaintiff was labeled a public employee

12   or a volunteer was not determinative of whether the plaintiff had stated a claim of First

13   Amendment infringement.  *Id*. at 1136.  Rather, the critical question was whether the plaintiff

14   had alleged the loss of a valuable government benefit or privilege in retaliation for his speech.

15   *Id*.  The Ninth Circuit concluded that the loss of a high-level volunteer position constituted a

16   deprivation of a valuable governmental benefit or privilege.  *Id*.  The Ninth Circuit subsequently

17   analyzed the First Amendment claim under *Pickering*.  *Id*. at 1137.  In coming to that

18   conclusion, the Ninth Circuit referenced a Second Circuit case holding that the dismissal of

19   a volunteer firefighter for complaining about low morale and inadequate training and discipline

20   could violate the First Amendment.[3]  *Id*. at 1135.

21        In this case, the Court recognizes that Plaintiffs were volunteers with Tecoma VFD, a

22   private non-profit corporation.  However, the Court finds that under the interlocal contract

23   between NDF and Elko County, Tecoma VFD was part of the Elko County Fire Protection

24   District.  (*See* Interlocal Contract (#41-1) at 12).  Thus, the administration of the overall District

25   was provided by NDF and the Elko County Commissioners serving as the Board of Directors.

26   (*See id.*).  The Court finds that Plaintiffs are more akin to government volunteers than purely

27

28        [3]  The Second Circuit however found that there was no constitutional violation in that
     case.  *Eng*, 972 F.2d at 1135 n.1.

private individuals who work for private corporations.  As such, the Court finds that *Pickering* applies to this case.

According to the complaint, Plaintiffs engaged in the following speech.  In 2011, Palmer called the NDF Office several times to inquire about a mechanic to fix Tecoma 53 and sent an email to the NDF fire management officer.  (*See* Compl. (#1) at 7-8).  Palmer eventually advised the Montello Town Board that Tecoma 53 had not been fixed and that they should consider discussing the issue with the Elko County Board of Commissioners.  (*Id.* at 8).  Commissioner Dahl was present at that town meeting.  (*Id.*).  In 2012, Farrell filled out an NDF injury report following his smoke inhalation injury with Tecoma 23.  (*Id.* at 9).  After NDF had "fixed" Tecoma 23, Palmer reported to NDF that significant mechanical damage had not been fully repaired.  (*Id.* at 10).  Farrell and Palmer repeatedly complained about the quality of inmate work on Tecoma 23, Tecoma 53, and other equipment.  (*Id.*).  Stokes allegedly wrote the February 9, 2012 letter in retaliation to these grievances and reports.  (*Id.*).

In 2007, Palmer voiced concerned to the captain of NDF about the disappearance of federal grant money that had been allocated for Tecoma VFD.  (*Id.* at 13).  Palmer and Farrell voiced the same concerns to the NDF fire management officer and captain.  (*Id.*).  Palmer later reported his concerns to the Elko County Sheriff, NDF Battalion Chief, U.S. Department of Interior, Federal Bureau of Investigation, U.S. Forest Service, U.S. Bureau of Land Management, the State of Nevada, Nevada Attorney General's Office, NDF, and Nevada Department of Natural Resources and Conservation.  (*Id.*).

Under step one, Defendants concede, for the purposes of this motion, that Plaintiffs' speech addressed issues of public concern.  (*See* Mot. for Summ. J. (#41) at 12).  As such, Plaintiffs have met their burden.

Under step two, Plaintiffs bear the burden of showing the speech was spoken in the capacity as a private citizen and not as an employee.  *Eng*, 552 F.3d at 1071.  If the speaker had no official duty to make the questioned statements or if the speech was not the product of performing the tasks the employee was paid to perform, then the statements are made in the speaker's capacity as a citizen.  *Id*.  However, speech which owes its existence to an

14

1
2
employee's professional responsibilities is not protected by the First Amendment. *Huppert v. City of Pittsburg*, 574 F.3d 696, 704 (9th Cir. 2009).

3
4
5
6
7
8
In this case, the Court finds that Farrell, as Fire Chief of Tecoma VFD, and Palmer, as Deputy Fire Chief of Tecoma VFD, had an official duty to speak out about the maintenance or repairs on the structure engines that Tecoma VFD used.  As such, the Court finds that Plaintiffs fail to demonstrate that they made the repair/maintenance speech in the capacity as a private citizen and, thus, their First Amendment retaliation claim fails with respect to that speech.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
With respect to the alleged grant fraud speech, the Court also finds that the grant fraud speech was made within Plaintiffs' capacity as Fire Chief and Deputy Fire Chief of Tecoma VFD rather than as private citizens.  In his September 30, 2012 declaration, Palmer further explained his grant fraud allegations.  (*See* Palmer Decl. (#41-1) at 68-70).  Since the Fall of 2008, Palmer had become aware that NDF had been receiving reimbursements from federal money for the use of fire suppression equipment for fires on federally-managed lands.  (*Id.* at 68).  Palmer had concerns because the equipment that NDF had used was owned by Elko County and the reimbursements should have been made to the County.  (*Id.* ).  Palmer felt that NDF should have been advising the County of this so that the County could seek reimbursement.  (*Id.*).  Palmer felt that NDF was double-dipping and taking money that could have been used for local volunteer fire departments' fire suppression efforts in the rural areas.  (*Id.*).  NDF had also taken Tecoma VFD's fire suppression equipment, including Tecoma 23 and Tecoma 53.  (*Id.* at 69).  Tecoma VFD owned the air packs that were inside Tecoma 53 at the time.  (*Id.*).  NDF refused to return the air packs, which Tecoma VFD owned via federal grant money, until Palmer threatened to file a formal theft report with the Federal Bureau of Investigation.  (*Id.*).  NDF's removal of the three structure engines reduced Tecoma VFD's ability to effectively respond to life safety calls.  (*Id.* at 70).

26
27
28
The Court finds that Plaintiffs' grant fraud speech was made in their capacities as Fire Chief and Deputy Fire Chief of Tecoma VFD because the speech related to receiving funding to operate the VFD and the equipment used with the VFD.  As such, the Court finds that

1  Plaintiffs' First Amendment retaliation claim fails as a matter of law because Plaintiffs have not

2  met their burden of establishing that their speech was spoken in the capacity as a private

3  citizen and not a public employee.

4      The Court further notes that Plaintiffs make no meritorious argument in their opposition

5  on this issue.   Rather, Plaintiffs argue that *Pickering* does not apply because they are not

6  public employees and therefore the second step can never apply to them because they are

7  not public employees.   The Court dismisses this argument in light of the Ninth Circuit's

8  jurisprudence on First Amendment retaliation law discussed above.   The Court grants

9  Defendant Stokes and Elko County summary judgment on the First Amendment retaliation

10  claim stated in claim one.

11      **B.      Due Process Violation (Claim One)**

12      Plaintiffs allege a Fourteenth Amendment due process violation against Stokes

13  because he prevented Plaintiffs from entering the Montello and Pilot Valley Fire Stations, from

14  using Elko County fire equipment, and from serving on the Tecoma VFD.   (*See* Compl. (#1)

15  at 14).

16      "A procedural due process claim has two distinct elements: (1) a deprivation of a

17  constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

18  protections." *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001). "To have a property

19  interest in a benefit, a person clearly must have more than an abstract need or desire for it.

20  He must have more than a unilateral expectation of it." *Bd. of Regents of State Colleges v.*

21  *Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). "Property interests, of

22  course, are not created by the Constitution.   Rather they are created and their dimensions are

23  defined by existing rules or understandings that stem from an independent source such as

24  state law-rules or understandings that secure certain benefits and that support claims of

25  entitlement to those benefits." *Id*. at 577, 92 S.Ct. at 2709.

26      In *Hyland*, the Ninth Circuit found that the plaintiff's volunteer status did not amount to

27  a constitutionally protected property interest and noted that the plaintiff's expectation of

28  continued volunteer status was not derived from either statutory authority or a written contract.

1
2
3

*Hyland*, 972 F.2d at 1140.  Instead, the plaintiff had relied on an alleged oral and implied promise that he could remain a volunteer.  *Id*.  The Ninth Circuit found that an "understanding" had to be "mutually explicit" to rise to the level of entitlement.  *Id*.

4
5
6
7
8
9
10

In this case, the Court finds that Plaintiffs do not have a property interest in their volunteer firefighter status because there is no statutory authority to support their continued firefighter status and no written contract in the evidence limiting Elko County's authority to terminate the volunteer position.  Additionally, the Court finds that Plaintiffs do not have a property interest to enter into Elko County's fire stations or to use Elko County's fire equipment.  Accordingly, the Court grants Defendants Stokes and Elko County summary judgment on the Fourteenth Amendment procedural due process claim stated in claim one.

11

**C.    *Monell* Policy or Custom Constitutional Violation (Claim Four)**

12
13
14

In the fourth cause of action, Plaintiffs allege that Elko County had a policy or custom that failed to adequately prevent Plaintiffs' constitutional violations.  (*See* Compl. (#1) at 17-18).

15
16
17
18
19
20
21

"A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  In order to establish government entity liability under *Monell*, a plaintiff must prove that: (1) the plaintiff possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation.  *Id*.

22
23
24

In this case, Plaintiffs have failed to establish a constitutional violation and therefore cannot establish a claim for governmental liability under *Monell*.  The Court grants Defendants Stokes and Elko County summary judgment on claim four.

25

**D.    State Law Claims**

26
27
28

There are no remaining federal claims in this case as further discussed in subsection II.  As such, this Court declines to exercise supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) (stating that the district court may decline to exercise

17

1   supplemental jurisdiction over a claim if the district court has dismissed all claims over which

2   it has original jurisdiction).  The Court dismisses the remaining state law claims for lack of

3   jurisdiction and directs Plaintiffs to re-file those claims in state court.

4       Accordingly, the Court grants Defendants Stokes and Elko County summary judgment

5   on claims one and four and dismisses state law claims two (tortious interference with

6   professional advantage against Stokes), three (defamation against Stokes), five (civil

7   conspiracy against Elko County and Stokes), and six (respondeat superior against Elko

8   County) for lack of jurisdiction.

9   **II.     Defendants Anderson and NDF's Motion for Summary Judgment (#45)**

10      Defendants Pete Anderson and NDF file a motion for summary judgment on all claims.

11  (Mot. for Summ. J. (#45) at 2).  Defendants assert that sovereign immunity bars all claims

12  against NDF and Anderson in his official capacity.  (*Id.* at 5).  Defendants argue that Plaintiffs

13  fail to state a civil conspiracy claim against Anderson in his personal capacity because there

14  are no factual allegations that name him as having any involvement in the February 2012

15  letters.  (*Id.* at 7).  Defendants assert that there is no evidence to support the allegations that

16  a conspiracy existed or was carried out.  (*Id.* at 8).  Defendants argue that the absence of an

17  actionable constitutional violation negates the existence of a conspiracy to violate

18  constitutional rights.  (*Id.* at 9).  Defendants assert that Plaintiffs have failed to plead any

19  allegations of fraud with specificity and therefore fail to state a claim for conspiracy to commit

20  grant fraud under claim five.  (*Id.* at 19).  Defendants contend that Anderson is entitled to

21  qualified immunity on all claims.  (*Id.* at 22).

22      In response, Plaintiffs voluntarily dismiss their claims against NDF and Anderson in his

23  official capacity.  (Opp'n to Mot. for Summ. J. (#54) at 2, 12).  Plaintiffs assert that they have

24  stated a conspiracy claim against Anderson in his personal capacity and, if they have not,

25  request leave to file an amended complaint.  (*Id.* at 12).

26      Defendants filed a reply.  (Reply to Mot. for Summ. J. (#58)).

27      As noted above, Plaintiffs voluntarily dismiss their claims against NDF and Pete

28  Anderson in his official capacity which include their 42 U.S.C. § 1983 *Monell* claim (claim four),

civil conspiracy (claim five), and respondeat superior (claim seven). The only remaining claim in dispute is the civil conspiracy claim against Pete Anderson in his individual capacity which is a state law claim. Because no federal causes of action exist, this Court dismisses claim five for lack of jurisdiction and directs Plaintiffs to re-file the claim in state court pursuant to 28 U.S.C. § 1367(c)(3). As such, the Court grants Defendants summary judgment on the fourth, fifth, and seventh claims against NDF and Pete Anderson in his official capacity and dismisses the fifth claim against Pete Anderson in his individual capacity for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants Robert Stokes and Elko County's Motion for Summary Judgment (#41) is GRANTED in part. The Court grants Defendants' motion for summary judgment on claims one and four and dismisses claims two, three, five, and six for lack of jurisdiction and directs Plaintiffs to re-file those claims in state court.

IT IS FURTHER ORDERED that Defendants Pete Anderson and Nevada Division of Forestry's Motion for Summary Judgment (#45) is GRANTED in part. The Court grants Defendants' motion for summary judgment on claims four, five, and seven against the Nevada Division of Forestry and Pete Anderson in his official capacity because Plaintiffs voluntarily dismiss those claims. The Court dismisses the fifth claim against Pete Anderson in his individual capacity for lack of jurisdiction and directs Plaintiffs to re-file that claim in state court.

There are no remaining claims in this case. The Clerk of the Court shall enter judgment accordingly.


DATED: This 30th day of July, 2013.

_____
United States District Judge